Kenneth H. Brown (CA Bar No. 100396)
Miriam Manning (CA BAR NO. 178584)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: 415/263-7000
Facsimile: 415/263-7010
E-mail: kbrown@pszjlaw.com
mmanning@pszjlaw.com

Tyler J. Bexley [*Pro Hac Vice App. pending*]
REESE MARKETOS LLP
750 N. Saint Paul St., Suite 600
Dallas, TX 75201
Telephone: 214/382-9810
E-mail: tyler.bexley@rm-firm.com

Attorneys for CoEfficient, LLC, and
TelEfficient, LLC; aka TeleSwitch Finance, LLC
Alleged Debtors

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>**COEFFICIENT, LLC,**<br><br>Alleged Debtor. | Case No.: 4:18-bk-41932<br>Chapter 7 |
| In re:<br><br>**TELEFFICIENT, LLC; aka TELESWITCH FINANCE, LLC**<br><br>Alleged Debtor. | Case No. 4:18-bk-41933<br>Chapter 7<br><br>**ALLEGED DEBTORS' REPLY TO GENBAND'S OPPOSITION TO MOTION TO DISMISS INVOLUNTARY PETITIONS**<br><br><u>Hearing</u><br>Date: October 24, 2018<br>Time: 8:00 a.m.<br>Place: Courtroom 220<br>1300 Clay Street<br>Oakland, CA 94612 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................................................................................................. 1

II. ARGUMENT .................................................................................................................... 2

    A. The Alleged Debtors' Fraudulent Inducement Defense Establishes a Bona Fide Dispute as to Genband's Claims ........................................................................... 2

        1. The Alleged Debtors' Fraudulent Inducement Defense is Legally Valid Under Texas Law. ............................................................................... 2

        2. The State Court Pleadings Detailing the Alleged Debtors Fraudulent Inducement Allegations are Sufficient to Establish a Bona Fide Dispute. ....... 3

        3. The Evidence Supports the Alleged Debtors' Fraudulent Inducement Defense. ............................................................................................................ 4

    B. The Alleged Debtors' Counterclaims Establish a Bona Fide Dispute ......................... 9

    C. The Court Should Abstain or Dismiss the Involuntary Petitions Pursuant to Section 305 ................................................................................................................ 10

III. CONCLUSION ............................................................................................................... 13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguayo v. AMCO Ins. Co.*,
 59 F. Supp. 3d 1225 n.18 (D.N.M. 2014) .................................................................................. 12

*Alamo Bank of Texas v. Palacios*,
 804 S.W.2d 291 (Tex. App. 1991) .......................................................................................... 6, 7

*Helmcamp v. Interfirst Bank Wichita Falls, N.A.*,
 685 S.W.2d 794 (Tex. App. 1985) .............................................................................................. 7

*In re Am. Res. & Energy, LLC*,
 513 B.R. 371, (Bankr. D. Minn. 2014) ........................................................................................ 3

*In re Biogenetic Techs.*,
 248 B.R. 852 (Bankr. M.D. Fla. 1999) .................................................................................... 2, 4

*In re CorrLine Int'l, LLC*,
 516 B.R. 106 (Bankr. S.D. Tex. 2014) ........................................................................................ 8

*In re Diamondhead Casino Corporation*,
 Case No. 15–11647(LSS), 2016 WL 3284674 (Bankr. D. Del. June 7, 2016) ............................ 4

*In re Eastman*,
 188 B.R. 621 (BAP 9th Cir. 1995) ............................................................................................ 10

*In re EB Holdings II, Inc.*,
 B.R. 2017 WL 10187837, at *21 (Bankr. D. Nev. Dec. 15, 2017) ............................................ 10

*In re ELRS Loss Mitigation, LLC*,
 325 B.R. 604 (Bankr. N.D. Okla. 2005) .................................................................................... 10

*In re Forever Green Athletic Fields, Inc.*,
 500 B.R. 413 (Bankr. E.D. Pa. 2013) ........................................................................................ 13

*In re KP3 Endeavors, Inc.*,
 Bankruptcy No. 12–00007–MM7, 2018 WL 2117242 (Bankr. S.D. Cal. Apr. 30, 2018) ........... 9

*In re Macke Int'l Trade, Inc.*,
 370 B.R. 236 (BAP 9th Cir. 2007) ............................................................................................ 10

*In re Marciano*,
 459 B.R. 27 (BAP 9th Cir. 2011) .............................................................................................. 10

*In re Mktg. & Creative Solutions, Inc.*,
 338 B.R. 300 (6th Cir. 2006) ....................................................................................................... 8

*In re Onyx Telecommunications, Ltd.*,
 60 B.R. 492 (Bankr. S.D.N.Y. 1985) .......................................................................................... 4

*In re Seko Investments, Inc.*,
 156 F.3d 1005 (9th Cir. 1998) ..................................................................................................... 9

*In re Sky Country Estates, LLC*,
 No. 17–11617–tl7, 2018 WL 3872109, at *5 (Bankr. D.N.M. Aug. 13, 2018) ......................... 12

*In re Smith*,
 243 B.R. 169 (Bankr. N.D. Ga. 1999) ....................................................................................... 11

*In re Vortex Fishing Sys., Inc.*,
 277 F.3d 1057 (9th Cir. 2002) ..................................................................................................... 3

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CA

*In re WLB-RSK Venture*,
  320 B.R. 221, 2004 WL 3119789, at *5 (9th Cir. BAP 2004) ...................................................... 3, 9

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*,
  341 S.W.3d 323, (Tex. 2011)............................................................................................................ 3

*LHC Nashua P'ship, Ltd. v. PDNED Sagamore Nashua, LLC*,
  659 F.3d 450 (5th Cir. 2011) ............................................................................................................ 8

*Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*,
  F. Supp. 3d, 2018 WL 4184775, at *9 (N.D. Tex. Aug. 30, 2018) ................................................... 3

*Town North Nat'l Bank v. Broaddus*,
  569 S.W.2d 489 (Tex. 1978)............................................................................................................ 2

*Town North Nat'l Bank*, 569 S.W.2d at 494 ........................................................................................ 5

*Viracola v. Dallas Int'l Bank*,
  508 S.W.2d 472 (Tex. App. 1974)................................................................................................ 2, 7

*Weitzel v. Barnes*,
  691 S.W.2d 598 (Tex. 1985)............................................................................................................ 5

*Wooldridge v. Groos National Bank*,
  603 S.W.2d 335 (Tex. App. 1980).................................................................................................... 6

**Statutes**

11 U.S.C. § 305.................................................................................................................................... 10

CoEfficient, LLC and TelEfficient, LLC (together, the "Alleged Debtors") hereby submit their reply to the *Opposition To Motion To Dismiss* (the "Opposition") filed by the petitioning creditor, Genband Management Services Corporation ("Genband") on October 10, 2018, along with the supporting declaration of Tyler Bexley ("Bexley Decl.").

## I.

## INTRODUCTION

Genband filed involuntary petitions against the Alleged Debtors to avoid or delay a jury trial in Texas state court and to gain leverage against the Alleged Debtors' $30 million counterclaims. The Court should dismiss the involuntary petitions because they involve a single claim—Genband's suit on several promissory notes and guaranties—that is the subject of a bona fide dispute pending in the State Court. Specifically, the Alleged Debtors contend (and the pleadings and evidence demonstrate) that Genband fraudulently induced the Alleged Debtors to enter into the promissory notes so that Genband could leverage millions of dollars in value from the Alleged Debtors' expertise and proprietary financial models. Genband believed that one of the Alleged Debtors, TelEfficient, could bring $200 million in value to Genband and even referred to TelEfficient as its "insurance policy" to "throw money at." Genband went to great lengths to hold on to its "insurance policy," making numerous misrepresentations to induce the Alleged Debtors into accepting loans from Genband and continuing to work with Genband.

Once Genband had extracted maximum value from the Alleged Debtors, Genband filed suit against the Alleged Debtors in Texas state court, despite representations that Genband would not seek to collect on the notes until the Alleged Debtors were generating revenue. After litigating its claims and the Alleged Debtors' counterclaims in the State Court for more than two years (including numerous depositions and thousands of pages of documents produced), Genband abruptly filed the involuntary petitions in response to the Alleged Debtors' rejection of a "walk-away" settlement offer. Because Genband's sole claim against the Alleged Debtors is subject to a bona fide dispute, the Alleged Debtors respectfully request that the Court dismiss the involuntary petitions or, alternatively, abstain from hearing them.

## II.

## ARGUMENT

### A. The Alleged Debtors' Fraudulent Inducement Defense Establishes a Bona Fide Dispute as to Genband's Claims

To establish standing to file the involuntary petitions, Genband was required to demonstrate that its claims were not the subject of a bona fide dispute. Genband does not contest that a valid affirmative defense to liability on the notes would constitute a bona fide dispute. Instead, Genband contends that the Alleged Debtors do not have a valid affirmative defense.

As is clear from the State Court pleadings, the Alleged Debtors assert that the notes are invalid because Genband fraudulently induced the Alleged Debtors to enter into the notes. A fraudulent inducement defense is sufficient to establish a bona fide dispute to a claim for payment on a contract. *See, e.g., In re Biogenetic Techs.*, 248 B.R. 852, 858–59 (Bankr. M.D. Fla. 1999) (finding a bona fide dispute on a contract claim where alleged debtor argued that the contract "was not enforceable because of misrepresentations that were made by [petitioning creditor] prior to the execution of the contract"). Moreover, the Alleged Debtors' fraudulent inducement defense is supported by the law, the State Court pleadings, and the evidence.

#### 1. The Alleged Debtors' Fraudulent Inducement Defense is Legally Valid Under Texas Law.

Texas law—which applies pursuant to a choice of law provision in the notes[1]—recognizes that "[f]raud in the inducement is a good defense in a suit on a note between the original parties." *Viracola v. Dallas Int'l Bank*, 508 S.W.2d 472, 474 (Tex. App. 1974). In fact, contrary to Genband's suggestion that the Alleged Debtors fraudulent inducement defense is "novel" and could "create unprecedented standards for the borrower-lender relationship" (Genband's Opp. at 5–6), the Texas Supreme Court explicitly recognizes that a borrower may contest the validity of a note based on a fraudulent inducement defense when there has been "a showing of some type of trickery, artifice, or device employed by the [lender]." *Town North Nat'l Bank v. Broaddus*, 569 S.W.2d 489, 494 (Tex. 1978).

---
[1] *See* Genband's Ex. A [Dkt. #20-1].

Additionally, Genband cannot avoid the Alleged Debtors' fraudulent inducement defense by relying on purported waiver language in the loan documents. Genband identifies a provision in the notes discussing the waiver of counterclaims and setoffs, but, tellingly, Genband does not provide any authority or analysis supporting an argument that the waiver language in the notes precludes the Alleged Debtors' fraudulent inducement defense. This is likely because Texas law is against Genband on this point. Under Texas law, "[a] general release (one lacking expressed clear and unequivocal intent to disclaim reliance or waive claims for fraudulent inducement) will not operate to extinguish a claim when the contract containing the release was procured through fraudulent inducement." *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa*, F. Supp. 3d, 2018 WL 4184775, at *9 (N.D. Tex. Aug. 30, 2018) (citing *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co.*, 341 S.W.3d 323, 331–36 (Tex. 2011)). Under *Italian Cowboy*, the seminal Texas case on fraudulent inducement, a claim for fraudulent inducement can only be waived by a specific disclaimer of reliance, which is not present in the notes here.

### 2. The State Court Pleadings Detailing the Alleged Debtors Fraudulent Inducement Allegations are Sufficient to Establish a Bona Fide Dispute.

Genband attempts to controvert the Alleged Debtors' fraudulent inducement defense with deposition testimony and documents from the State Court Action. In other words, Genband asks this Court to look beyond the State Court pleadings and decide the merits of hotly contested state court claims. This ignores the Ninth Circuit's instruction that, in evaluating whether there is a bona fide dispute, "a bankruptcy court is not asked to evaluate the potential outcome of the dispute." *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1064 (9th Cir. 2002). Rather, the Court need only "determine whether there are facts that give rise to a legitimate disagreement over whether money is owed." *Id.* This determination is routinely made on the basis of pleadings filed in prepetition litigation. *See, e.g.*, *In re WLB-RSK Venture*, 320 B.R. 221, 2004 WL 3119789, at *5 (9th Cir. BAP 2004) (finding bona fide dispute based on pleadings showing that debtor's obligation under a note was "hotly contested"); *In re Am. Res. & Energy, LLC*, 513 B.R. 371, 385–86 (Bankr. D. Minn. 2014) (explaining that a bona fide dispute exists where "facts are pled or framed *plausibly* to support a defense" and holding that "the status of . . . pre-petition litigation and the face of its pleading is

sufficient to make out a bona fide dispute"); *In re Biogenetic Techs.*, 248 B.R. at 856–58) (explaining that determining a bona fide dispute "involves a limited analysis" and relying on state court pleadings and affidavits to find a fraudulent inducement defense sufficient to create a bona fide dispute).

The cases on which Genband relies do not require the Court to delve into the merits in determining whether there is a bona fide dispute. In *In re Diamondhead Casino Corporation*, Case No. 15–11647(LSS), 2016 WL 3284674 (Bankr. D. Del. June 7, 2016), the bankruptcy court found no bona fide dispute because the debtor's affirmative defenses had either been waived or were contrary to Delaware law. *Id.* at *12). In other words, the debtor's defenses were negated as a matter of law. In *In re Onyx Telecommunications, Ltd.*, 60 B.R. 492 (Bankr. S.D.N.Y. 1985), the bankruptcy court held that the mere existence of a state court lawsuit did not create a bona fide dispute where "the Debtor does not deny that a debt is owing but disputes the amount." *Id.* at 498). Because $750,000 of the petitioning creditor's claim was not disputed, the court did not have to address the merits of the disputed portion of the claim.

These cases merely stand for the proposition that a bona fide dispute requires a claim that is neither partially undisputed nor precluded by state law. The Alleged Debtors claims easily satisfy these requirements. As explained above, the Alleged Debtors' fraudulent inducement defense is clearly recognized under Texas law. And the Alleged Debtors vigorously dispute the validity of the notes, as evidenced by the detailed recitation of facts in the Alleged Debtors' 28-page Counterclaim, Genband's decision to withdraw its summary judgment motion and pursue discovery, and the eight depositions and thousands of pages of documents exchanged in the State Court Action. *See* RJN, Exhibits F & G; Bexley Decl. ¶ 9. These extensive pleadings and months of voluminous discovery make clear that Genband's claims are the subject of a bona fide dispute in the State Court Action.

**3.  The Evidence Supports the Alleged Debtors' Fraudulent Inducement Defense.**

Although the Court need not examine any evidence to find a bona fide dispute, the Court will find sufficient evidence in the record to support the Alleged Debtors' fraudulent inducement defense. As previously explained, Texas law recognizes a borrower's fraudulent inducement defense to a loan

obligation when there has been "a showing of some type of trickery, artifice, or device employed by the [lender]." *Town North Nat'l Bank*, 569 S.W.2d at 494. "'Trickery,' 'artifice,' and 'device' are but synonyms for intent to deceive or misrepresent." *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex. 1985).

Here, there is ample evidence that Genband engaged in deception and misrepresentations to induce the Alleged Debtors to enter into the notes. Genband's former President of Global Sales testified that TelEfficient's financial modeling and expertise were important to Genband and represented "possibly a $200 million idea for Genband." Bexley Decl. Ex. 1 at 72:4-12, 78:9-13, 83:14-84:1. The head of Genband's AT&T account echoed these sentiments, testifying that "there was significant value in TelEfficient in what we could bring to AT&T for multiple programs." Bexley Dec. Ex. 2 at 97:3-7. Because of the value that TelEfficient brought, Genband needed to ensure that TelEfficient was in a financial position to continue building financial models for the benefit of Genband and its customers. Bexley Decl. Ex. 3 at 134:7-16; Ex. 1 at 174:7-175:1. To accomplish this and to ensure TelEfficient's continued value to Genband in providing financial modeling and services that Genband could not, Genband made several loans to the Alleged Debtors. *Id.*

Genband, however, knew that the Alleged Debtors did not have any source of revenue or cash flow outside of their work with Genband. Bexley Dec. Ex. 1 at 191:19-21. Thus, the Alleged Debtors would only be comfortable accepting loans from Genband to fund TelEfficient's continued work with Genband's customers with the understanding that the Alleged Debtors would repay the notes from revenue generated on Genband projects. Genband's Ex. E-2 [Dkt. #20-7] (Armbruster Dep. at 315:17-316:5). Genband, eager to continue its lucrative relationship with TelEfficient at any cost, made numerous misrepresentations to induce the Alleged Debtors to accept the notes. For example:

- In an email exchange between TelEfficient's CEO, Murat Armbruster, and Genband's Executive Vice President, Steven Bruny, Mr. Armbruster expressed a concern that a provision in a draft note allowed Genband to "call the note any time." Ex. A-6. In response, Mr. Bruny stated that "the[y] won't" actually call the notes, despite this provision. *Id.* In his deposition, Mr. Bruny acknowledged that this was "just [his] gut or opinion"

and that he had not actually discussed with anyone at Genband whether they would, in fact, call the notes. Bexley Decl. Ex. 4 at 199:3-19.

- In his deposition, Mr. Bruny acknowledged that, even after Genband knew that AT&T was proceeding without TelEfficient financing, Genband continued to tell the Alleged Debtors that AT&T was considering a deal with TelEfficient. Bexley Decl. Ex 4 at 138:3-140:1, 142:8-15; *see also Id.* at 184:17-185:1. Genband made these misrepresentations during a time period when the Alleged Debtors were deciding whether to take on additional loans from Genband, despite Mr. Bruny's testimony that he knew the Alleged Debtors were "relying on GENBAND . . . to be truthful and forthcoming . . . [a]nd not to withhold or refuse to disclose that information" and were incurring expenses in reliance on Genband's representations. *Id.* at 169:22-170:15.

- In October 2014, several months before the Alleged Debtors executed one of the notes with Genband, Genband's President gave the following instructions about dealing with the Alleged Debtors: "[T]his deal with [AT&T] will not happen without [TelEfficient's] Energy Services Agreement so we need to tread lightly with these guys and not spook them until we know more. Don't communicate with them unless its anything but the official company line. . . . Also we don't want to push them on anything contractual right now either. They are a bit fragile and we need them to complete the order when the time is right." Bexley Decl. Ex. 7.

Genband had no problem making these misrepresentations and extending several loans to the Alleged Debtors because Genband viewed TelEfficient as "an insurance policy" to "throw[] money at." Bexley Decl. Ex. 8. And when Genband had extracted maximum value from its "insurance policy," Genband filed the State Court Action, notwithstanding its prior representations.

In similar cases, Texas courts have consistently found sufficient evidence to support a fraudulent inducement defense. For example, in *Wooldridge v. Groos National Bank*, 603 S.W.2d 335 (Tex. App. 1980), the borrower submitted an affidavit testifying that the lender (1) represented that the loan would not be due until the borrower received funds from a third-party source; and (2) engaged in a course of conduct designed to cause the borrower to believe that the notes would be extended and renewed until the borrower could repay them. *Id.* at 339). There was also evidence that the lender personally benefited from the loan. *Id.* at 342). Similarly, in *Alamo Bank of Texas v. Palacios*, 804 S.W.2d 291 (Tex. App. 1991), the court of appeals upheld a fraudulent inducement

defense where the borrower signed a promissory note based on the lender's representation that it would not share certain information with law enforcement authorities. *Id.* at 294). However, the lender had already given the information to authorities at the time of the representation, which the court found to demonstrate deceit on the part of the lender. *Id*). Other Texas cases are in accord. *See, e.g.*, *Helmcamp v. Interfirst Bank Wichita Falls, N.A.*, 685 S.W.2d 794, 795–96 (Tex. App. 1985) (reversing summary judgment for lender and finding fact issue on borrower's fraudulent inducement defense based on affidavit setting forth bank's statement that borrower would not be liable on the loan); *Viracola*, 508 S.W.2d at 474–75 (finding fact issue for trial on fraudulent inducement defense where lender represented that if a sale was not finalized, borrower would not have to repay the loan).

Like the lenders in these cases, Genband made knowing misrepresentations for the purpose of inducing the Alleged Debtors to execute the notes. Genband benefited from the loans by keeping TelEfficient as its "insurance policy" to help Genband close millions of dollars in deals with telecommunications companies. In short, the evidence is more than sufficient to establish a bona fide dispute.

Genband seeks to avoid the extensive evidence of its fraud by pointing to statements by the Alleged Debtors' representatives purporting to recognize the validity of the notes. For example, Genband cites to the Alleged Debtors' financial statements, correspondence with investors, and correspondence with Genband in which the Alleged Debtors recognize amounts owing to Genband. Genband's Opp. at 6–11. According to Genband, the Alleged Debtors' inclusion of the loans on financial documents several years ago precludes them from raising a fraudulent inducement defense. Genband's argument ignores the nature of fraud, which necessarily involves misrepresentations and concealment. The Alleged Debtors had no way of knowing at the outset of the parties' relationship that the representations on which they were relying were false. Genband's argument is essentially a ratification defense to fraud, in that Genband contends that the Alleged Debtors' subsequent recognition of the loans extinguishes their fraudulent inducement defense. Although Texas law recognizes ratification as a defense to fraud, the defense is only available where one recognizes the validity of a contract with "*full knowledge* of the fraudulent acts." *LHC Nashua P'ship, Ltd. v.*

*PDNED Sagamore Nashua, LLC*, 659 F.3d 450, 461 (5th Cir. 2011) (citing Texas law). Here, given the lengths to which Genband went to conceal information from the Alleged Debtors, Genband cannot credibly argue that the Alleged Debtors had "full knowledge" of Genband's fraud when corresponding with investors and preparing financial documents.

Genband also contends that the Alleged Debtors "concocted" their fraudulent inducement claim "a year into litigation." Genband Opp. at 2. That is simply not true. The Alleged Debtors waited to file their counterclaims because they were in the process of attempting to settle their disputes with Genband without costly litigation. Bexley Decl. Ex. 10. But Genband was well aware of the Alleged Debtors' contentions and their intent to assert counterclaims from near the outset of the litigation. *Id.* Nor is there any merit to Genband's contention that the Alleged Debtors' CEO, Murat Armbruster, acknowledged the validity of the debts. To the contrary, Mr. Armbruster testified that his "understanding going into this note was that repayment was going to happen through a transaction with GENBAND" and that GENBAND "induced [him] into signing [the notes] under the representations they made." Genband Ex. E-2 [Dkt. #20-7] (Armbruster Dep. at 315:17-316:5); *see also Id.* at 325:12-14, 345:5-11.[2]

Genband cites several cases for the proposition that the Alleged Debtors' financial statements and correspondence "are evidence that no bona fide dispute exists" (Genband's Opp. at 6), but those cases are inapposite. In two of Genband's cases, the debtor's prepetition recognition of the debt undermined the debtor's defense as a matter of state law. *See In re Mktg. & Creative Solutions, Inc.*, 338 B.R. 300, 306 (6th Cir. 2006) (holding that a letter from the debtor's president acknowledging a debt established that there was no bona fide dispute because the letter resolved underlying state-law agency issues); *In re CorrLine Int'l, LLC*, 516 B.R. 106, 147–48 (Bankr. S.D. Tex. 2014) (holding that debtor could not claim to be unaware of a loan when one of its principals acknowledged the loan

---

[2] Genband also claims that the Alleged Debtors' Chief Financial Officer, Hao Lam, acknowledged in his deposition that he did not think the notes were contingent on any deals with telecommunications companies closing with TelEfficient financing. Mr. Lam, however, was not involved in the negotiations of the notes with Genband and had no exposure to Genband's misrepresentations during that process. Bexley Decl. Ex. 5, Lam Dep. at 84:4-6, 102:4-7, 110:24-111:2. Genband also omits from its citation Mr. Lam's deposition testimony that he understood at least one of the notes to have been "closely tied to closing the [AT&T] 1A deal" and was led to believe that "GENBAND was giving us this note to tie us over 'til we closed the [AT&T] 1A deal, because it was -- we were -- we were all very confident that it would -- we would close the deal." *Id.* at 86:24-87:22. Thus, Mr. Lam's testimony is consistent with Mr. Armbruster's testimony supporting the Alleged Debtors' fraudulent inducement defense.

in prior documents).  And *In re KP3 Endeavors, Inc.*, Bankruptcy No. 12–00007–MM7, 2018 WL 2117242 (Bankr. S.D. Cal. Apr. 30, 2018), the debtor did not contest the validity of the debt but rather relied on separate disputes as a basis for avoiding payment. *Id.* at *7).  Here, on the other hand, there is a legitimate dispute regarding the validity of the notes.  And the Alleged Debtors' acknowledgment of the notes—prior to discovering Genband's fraud—is not inconsistent with a fraudulent inducement defense under Texas law.

The Involuntary Petitions are an obvious litigation tactic to avoid a Texas jury trial on the counterclaims. The Court should reject Genband's attempted forum shopping and dismiss the involuntary petitions because they involve a claim that is subject to a bona fide dispute.

### B. The Alleged Debtors' Counterclaims Establish a Bona Fide Dispute

Genband does not contest the validity of the Alleged Debtors' counterclaims, instead citing *In re Seko Investments, Inc.* for the proposition that "a counterclaim against a creditor does not automatically render the creditor's claim subject to a 'bona fide dispute.'"  Genband Opp. at 14–15 (citing *In re Seko Investments, Inc.*, 156 F.3d 1005 (9th Cir. 1998)).  In another Ninth Circuit case, a petitioning creditor advanced the same argument in reliance on *Seko*, and the Bankruptcy Appellate Panel rejected it:

> In [*Seko*], the Ninth Circuit did state (as quoted by Kaplan in his opening brief) that "the existence of a counterclaim against a creditor does not automatically render the creditor's claim the subject of a 'bona fide dispute.'" What Kaplan fails to acknowledge in his brief, however, is that the Ninth Circuit then states that a claim or counterclaim for recoupment arising from the same transaction as the obligation is essentially a defense to that obligation and may render the debt "disputed."

*In re WLB-RSK Venture*, 2004 WL 3119789, at *5. )

Here, the Alleged Debtors' counterclaims arise from the same transaction as the notes. Specifically, the Alleged Debtors contend that Genband not only fraudulently induced the Alleged Debtors into the notes, Genband also engaged in other acts of common law fraud during the course of the parties' relationship.  RJN, Exhibit F.  The Alleged Debtors also contend that Genband used the notes to extract value from the Alleged Debtors, including access to the Alleged Debtors' trade

secrets, which Genband then misappropriated without payment. *Id.* Based on these allegations, the Alleged Debtors seek up to $30,100,000 in damages. Bexley Decl. Ex. 11. Because the Alleged Debtors' counterclaims would entirely erase any amount due to Genband and arise from the same transaction as the notes, the counterclaims establish a bona fide dispute.

C. **The Court Should Abstain or Dismiss the Involuntary Petitions Pursuant to Section 305**

Even if Genband could establish this Court's jurisdiction to proceed with an involuntary bankruptcy, the Court may dismiss the case or suspend all proceedings "if the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Genband, relying on *In re Eastman*, 188 B.R. 621 (BAP 9th Cir. 1995), suggests that abstention is only appropriate where the parties are working on a creditor's "arrangement." Genband's Opp. at 17–18. Although *Eastman* provides that one of many scenarios when abstention is appropriate, it clearly not a requirement. Indeed, courts in this circuit have consistently held that the existence of litigation in another forum, in and of itself, is a basis to abstain or dismiss. *See, e.g.*, *In re Macke Int'l Trade, Inc.*, 370 B.R. 236, 247 (BAP 9th Cir. 2007) (dismissing involuntary petition in "essentially a two-party dispute" where "there was pending litigation in another forum" and the petitioning creditor, "in commencing the involuntary case, . . . was forum-shopping"); *In re EB Holdings II, Inc.*, B.R. 2017 WL 10187837, at *21 (Bankr. D. Nev. Dec. 15, 2017) (staying involuntary bankruptcy because state court actions were "the appropriate and existing proceedings to resolve issues under nonbankruptcy law in a court that has undisputed authority to enter a final judgment"). Abstention is particularly appropriate where, as here, the petitioning creditor is improperly using the involuntary petition as a means to resolve a two-party state court dispute. *See In re ELRS Loss Mitigation, LLC*, 325 B.R. 604, 634 (Bankr. N.D. Okla. 2005) ("It is well established that the use of an involuntary bankruptcy filing is an improper method of resolving a two-party dispute.").

Moreover, each of the seven factors set forth in *In re Marciano*, 459 B.R. 27, 46–47 (BAP 9th Cir. 2011), favors abstention.

1. **The economy and efficiency of administration.** Genband's arguments on this

factor rest on two faulty premises: (a) that a Chapter 7 liquidation is inevitable; and (b) that the bankruptcy court can resolve all of the issues in the case. The first premise is flawed because, as discussed in more detail under factor 3, it presupposes that Genband will prevail on the parties' state court claims. The second premise is flawed because the Alleged Debtors have objected to the bankruptcy court's entry of final orders or judgment in this case and asserted the right to a jury trial in the district court. Thus, while the federal forum will require at least two judges to resolve the parties' disputes, the State Court can resolve all of the pending matters between the parties.

**2. Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court.** This factor clearly favors abstention because the State Court Action was pending at the time of the involuntary petitions and was fully capable of resolving the parties' disputes. Genband seems to concede this point. *See* Genband's Opp. at 22 ("Even if this factor weighs in the Alleged Debtors' benefit, it would be the only one.").

**3. Whether federal proceedings are necessary to reach a just and equitable solution.** Genband contends that the bankruptcy forum is necessary to "preside over the liquidation of" claims and "oversee the orderly distribution of the Alleged Debtors' estates." Genband Opp. at 22, 24. But Genband's argument puts the cart before the horse by assuming that (a) Genband will prevail on its claims in the State Court Action; and (b) the Alleged Debtors will not recover on its counterclaims in the State Court Action. If the Alleged Debtors prevail, there will be no need for a bankruptcy because there will be a positive net recovery to the Alleged Debtors, considering that the Alleged Debtors' damages are substantially higher the amount Genband seeks on the notes. Thus, even if Genband had a colorable basis to file the involuntary petitions—which it did not—abstention would still be a more efficient use of judicial resources to allow the State Court Action to be reduced to judgment to determine whether a bankruptcy is even necessary. *See In re Smith*, 243 B.R. 169, 198 (Bankr. N.D. Ga. 1999) ("Numerous involuntary cases have been dismissed on the basis that a single creditor filed the petition prior to exhausting its state law remedies.").

**4. Whether there is an alternative means of achieving an equitable distribution of assets.** As with factor 3, Genband's arguments on this factor presume that liquidation is necessary, but Genband has not made such a showing.

5. **Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement that better serves all interests in the case.** Again, Genband assumes that "liquidation of the Alleged Debtors' assets is inevitable" (Genband's Opp. at 23) without making such a showing. The State Court Action provides a more efficient vehicle to reach an out-of-court arrangement, as the parties are under an order to mediate the case in State Court (and, in fact, had a mediation scheduled before Genband filed the involuntary petitions).

6. **Whether a nonfederal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process.** Although Genband attempts to apply this factor in its favor, this factor is simply not applicable when there is not a pending receivership or other nonfederal insolvency proceeding. *See In re Sky Country Estates, LLC*, No. 17–11617–tl7, 2018 WL 3872109, at *5 (Bankr. D.N.M. Aug. 13, 2018) ("This factor seems to apply when a state court receivership action was pending when the bankruptcy case was filed. There is no receivership action here.").

7. **The purpose for which bankruptcy jurisdiction has been sought.** As set forth in detail in the Motion to Dismiss, Genband's filing of the involuntary petitions appears to be a litigation tactic designed to delay trial in the State Court Action and gain leverage over the Alleged Debtors. Genband contends that proceeding in bankruptcy court does not give any advantage to Genband because the Court will not favor one party over the other. Of course, the Alleged Debtors do not contend that this Court would favor Genband, but there are clear differences between a Texas state court and a California bankruptcy court. For example, there is a perception that "federal courts are more apt to grant summary judgment" and "are less liberal in admitting expert testimony at trial." *Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1272 n.18 (D.N.M. 2014). The fact that Genband never reset its withdrawn motion for summary judgment in State Court—despite telling the State Court that the motion would be "reset . . . following discovery (RJN, Exhibit G)—suggests that Genband may perceive federal court as a more favorable forum to litigate its claims.

Additionally, even if Genband is not seeking a more favorable forum, the timing of its filing of the involuntary petitions followed immediately by a removal of the State Court Action to federal court suggests that Genband was seeking to delay the November jury trial in State Court. In fact,

Genband stated in its notice of removal to the Dallas bankruptcy court that it was removing the case "in response to [the Alleged Debtors'] counsel's . . . statement of intention to pursue claims against GENBAND." RJN, Exhibit L. "Courts have found that the filing of an involuntary petition as part of a creditor's effort to forestall pending litigation with the putative debtor to be evidence of that creditor's bad faith." *In re Forever Green Athletic Fields, Inc.*, 500 B.R. 413, 427 (Bankr. E.D. Pa. 2013).

### III.
### **CONCLUSION**

This is a two-party dispute under Texas law that should remain in the Texas State Court for resolution. The Court should reject Genband's forum shopping and abstain or dismiss the involuntary petitions.

Dated: October 17, 2018
PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Kenneth H. Brown*
Kenneth H. Brown
Miriam Manning

-and-

Tyler J. Bexley
REESE MARKETOS LLP

Attorneys for CoEfficient, LLC, and TelEfficient, LLC; aka TeleSwitch Finance, LLC Alleged Debtors